UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| ZACHARIAH DELANE DAY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 25-006-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| FRANK BISIGNANO, Commissioner of Social Security, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Zachariah Day ("Day") appeals the Commissioner of Social Security's (the "Commissioner") denial of his claim for disability insurance benefits. However, Administrative Law Judge Jerry Lovitt's (the "ALJ") decision is supported by substantial evidence and he correctly considered all relevant evidence in rejecting Day's benefits claim. As a result, the Commissioner's decision will be affirmed and Day's motion for summary judgment will be denied.[1]

**I.**

Day filed the current application for disability insurance benefits on February 2, 2022, alleging a disability beginning on December 21, 2021.[2] [Tr. 17] The application was denied

---

[1] References to the Administrative Transcript located at Record No. 5 will be referred to hereafter as "Tr."

[2] Day filed a prior application for disability benefits on July 15, 2020. [Tr. 22] That claim was denied November 23, 2020, and on reconsideration (May 3, 2021). [*Id.*] ALJ Jerry Lovitt (the same ALJ) issued a decision upholding the denial of benefits on December 23, 2021. [Tr. 77-88]

initially (on April 27, 2022) and upon reconsideration (on September 12, 2022). [*Id.*] The ALJ held an administrative hearing regarding Day's claim on October 10, 2023. [*Id.*] On December 11, 2023, he issued a written opinion denying benefits. [Tr. 17-35] The Appeals Council denied Day's request for review on November 22, 2024. [Tr. 1-6] Administrative review has been exhausted, and the matter is ripe for judicial review. *See* 42 U.S.C. § 405(g).

## II.

A "disability" under the Social Security Act (the "Act") is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination regarding disability

based on medical evaluations and current work activity, the Commissioner will review the claimant's residual functional capacity ("RFC") and relevant past work to determine whether he can perform his past work. 20 C.F.R. § 404.1520(e). If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

The Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

Day was 22 years old when he applied for disability insurance benefits for the second time. [Tr. 34] He was employed previously as a grocery-stocker and later as a janitor. [Tr.

56; 25] Day stopped working in November 2022 due to alleged anxiety issues.[3]  [Tr. 25] He claims a disability onset date of December 21, 2021.  [Tr. 17]

The ALJ conducted the five-step analysis referenced above to evaluate Day's disability claim.  [Tr. 20] At step one, he found Day met the insured status requirements of the Act through September 30, 2025, and that he had not engaged in substantial gainful employment since November 4, 2022.  [*Id.*]  At step two, the ALJ determined that Day suffers from the severe impairments of "depression, social anxiety, generalized anxiety disorder, obsessive-compulsive disorder with mixed obsessional thoughts and acts, attention-deficit/hyperactivity disorder (ADHD), and heart disease."  [*Id.*]

The ALJ determined at step three that Day's conditions (singly or in combination) did not equate to any severe impairments under the listings in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1").  [Tr. 21] He next determined that Day had the RFC to perform medium work with additional specified limitations.  [Tr. 24]  At step four, the ALJ found that Day was able to perform his past relevant work as a janitor, and that the role does not require performance of work-related activities precluded by Day's RFC.  [Tr. 33]  Finally, at step five, the ALJ determined that, alternatively, Day could still perform a significant number of jobs in the national economy based on his age, education, work experience, and RFC.  [Tr. 35]

### IV.

Day primarily challenges the ALJ's determinations regarding (1) Day's lack of severe impairments under Appendix 1, and his RFC.  [Record No. 6-1, p. 8]

---

[3]  Although Day worked for two months as a janitor from September to November 2022, his alleged disability onset date is December 21, 2021.  [Tr. 22]

- 4 -

**Appendix 1 Impairment Determination**

Day contends that the ALJ lacked substantial evidence to conclude his ability to interact with others was limited moderately, rather than extremely. Under Appendix 1, the ALJ evaluated Day for the listed impairments of depressive, bipolar and related disorders (12.04), anxiety and obsessive-compulsive disorders (12.06), and neurodevelopmental disorders (12.11). "Paragraph A of each listing (except 12.05) includes the medical criteria that must be present," and Paragraph B provides the functional criteria assessed to evaluate how a mental disorder limits a claimant's functioning. 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00 (Mental Disorders). To satisfy the paragraph B criteria, mental disorders must result in extreme limitation of one, or marked limitation of two, of the four areas of mental functioning. *Id.* The four areas of mental functioning are listed as "understanding, remembering, or applying information; *interacting with others*; concentrating, persisting, or maintaining pace; or adapting or managing oneself." *Id.* (citation modified).

The ALJ determined that Day's ability to interact with others was moderately (not severely) limited based on several sources. First, the ALJ properly considered that Day's adult function reports, which indicated that he regularly attends church. On the same report, when asked whether he had "any problems getting along with family, friends, neighbors, or others," Day marked "no." He further elaborated "I get along but mostly don't talk and am uncomfortable." [Tr. 286; 312] Although Day contends this information is inconsistent when compared to the whole record, that does not preclude the ALJ from considering it. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009).

The ALJ next noted that Dr. Martin, Day's psychiatrist, described his condition as "relatively stable and at his baseline" despite social anxiety in October 2021. [Tr. 22 (citing

Tr. 532).] Day argues that the ALJ omitted Dr. Martin's other comments including that "[h]e continues to have significant social anxiety which has led to him not being able to maintain a job and leads to poor socialization during events, but his overall level of stress has reduced since he is no longer working." [Tr. 532] While the "omitted" statement favors Day's claim, it does not establish that the ALJ ignored the information or that he did not fully consider the record. *See Bayes v. Comm'r of Soc. Sec.*, 757 F. App'x 436, 445 (6th Cir. 2018) (noting that an ALJ is not required to explain all of the evidence in the record).

The ALJ found that during the administrative hearing that Day "presented as polite and with no problems communicating at all, was a good historian of the medical history, and was socially engaging with a pleasant and professional demeanor. [His] answers to specific questions were all responsive, well thought out, and appropriate." [Tr. 22] But Day asserts that his actual testimony in the hearing belies this conclusion. Specifically, he alleges that the ALJ said, "[w]ell, do you—obviously you're nervous right now. You are having trouble communicating what you have communicated or have communicated." [Record No. 6-1, p. 12] However, as the Commissioner points out, the foregoing statement was made by Day's attorney, not the ALJ. [Tr. 63] Further, observations regarding Day's demeanor at the hearing "are 'material, relevant, and admissible' factors for the ALJ's consideration." *Sorrell v. Comm'r of Soc. Sec.,* 656 F. App'x 162, 171 (6th Cir. 2016) (quoting *Martin v. Sec'y of Health and Human Servs.*, 735 F.2d 1008, 1010 (6th Cir. 1984)).

Day next contends that "[t]he ALJ failed to show any connection between Day's continued social anxiety and the findings of cooperation with providers, findings of goal directed and linear thought process, good judgment and impulse control "despite a depressed and anxious mood." [Record No. 6-1 (citing Tr. 22).] However, the ALJ mentioned that

- 6 -

information, in addition to findings that Day's "mood, affect, and speech significantly improved over the course of the relevant period" to support his finding that Day's ability to interact with others was only moderately limited. [Tr. 22] Even accepting Day's assertions that "the social anxiety symptoms ebb and flow," the ALJ relied on the appointment, an interaction itself, and Dr. Martin's notes, to determine that Day's ability to interact with others was only moderately limited, and did not reflect an "inability to function independently, appropriately, or effectively, and on a sustained basis." [Record No. 6-1, p. 13; Tr. 22 (defining an extreme limitation).]

Finally, Day argues that the ALJ mischaracterized the purported improvement in his social anxiety symptoms. [*Id.*] Specifically, he alleges that his condition did not improve, and alternatively, any improvements only occurred because he stopped working. However, the ALJ noted that in January 2023, Dr. Martin observed Day's tone of voice had improved, he was more interactive with family, and Day's father found him more talkative. [Tr. 29]

The ALJ also relied on Dr. Martin's findings that after Day began attending individual therapy, his anxiety and ability to interact with extended family saw intermittent improvements. [Tr. 29; 896; 901] Although Dr. Martin did note that Day's anxiety was worse on same date he noticed generalized improvements, the change was based on Day's upcoming disability hearing. Further, the ALJ reasonably attributed many of these improvements to changes in Day's medication, rather than his lack of a full-time job. [Tr. 29-30]

Finally, on June 30, 2023, Dr. Martin noted that Day's baseline anxiety was lower, and that Day was "less isolative and more interactive than previously." [Tr. 896] And on September 1, 2023, Dr. Martin acknowledged a high degree of improvement over the past year. [Tr. 874] Although contradictory evidence exists, the ALJ did not err in relying on substantial

evidence to conclude that Day was only moderately limited in his ability to interact with others. *Smith v. Chater,* 99 F.3d 780, 782 (6th Cir. 1996) (holding that substantial evidence can support opposite conclusions).

### Residual Functional Capacity

Day also argues that the ALJ's RFC determination was not supported by substantial evidence. An individual's RFC reflects the most he can do in the workplace on a sustained basis, despite his impairments. 20 C.F.R. § 404.1545. Here, the ALJ determined that Day is capable of medium work with the following additional limitations:

> He can understand, remember, and carry out simple and detailed, but not complex, instructions. He requires an occupation with an established and predictable routine with familiar procedures in place and can occasionally deal with changes in a routine work setting with no manufacturing sector fast-paced production line, hourly quota, or production pace assembly line work and with frequent interactions with supervisors and occasional interactions with coworkers as necessary for task completion while in a non-public work setting.

[Tr. 24] Like his first claim, Day contends the RFC determination was also erroneous because it was not rooted in substantial evidence.

He asserts that "[t]he ALJ has not cited any medical evidence from a treating source that demonstrates Day's social anxiety will allow him to function in the workplace." [Record No. 6-1, p. 20] But the ALJ evaluated the opinions of state agency psychological consultants Dan Vandivier, Ph.D. and Mary K. Thompson, Ph.D. [Tr. 30] Their assessment revealed that while Day has "moderate limitations in interacting with others," he "can interact as needed for task completion with supervisors and peers (at least once up to 1/3 of the time), and interact with the public (at least once up to 1/3 of the time), as well as with adequate capacity for responding appropriately to criticism from supervisors." [*Id.*]

- 8 -

After reviewing the complete record, the ALJ determined that Day "can perform simple and detailed, but not complex, instructions" which contradicted Vandivier and Thompson's assessment that Day could follow more complex instructions. [*Id.*] He also determined that Day was able to interact with supervisors more frequently than they recommended, given improvements in his condition following changes in medication and individual therapy the undersigned addressed above. [*See* Tr. 29; 31; 896; 901.]

The ALJ did not err in giving less credence to the opinions of Dr. Martin and therapist Ashley Anderson. In evaluating medical opinions and prior administrative medical findings, an ALJ determines their persuasiveness using the factors listed in 20 C.F.R. § 404.1520c(c), the most important being supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). In this case, both providers opined that at various points in time, Day was significantly limited in his ability to interact with others. [Tr. 32; 562-63; 644-645; 786] But the ALJ found their opinions less persuasive because after both of their negative assessments earlier in 2023, Dr. Martin noted a high degree of overall improvement in September. [Tr. 32; 874]

Likewise, the ALJ found the opinions of Vandivier and Thompson more persuasive because they "based their findings upon a thorough review of the available medical records and a comprehensive understanding of agency rules and regulations and supported their conclusions with reasonable explanations, and their conclusions are largely consistent with the record overall." [Tr. 31] To the extent their findings did not reflect newer changes to Day's condition, the ALJ ensured that he took the entire record into account, which led to his conclusion Day "can perform simple and detailed, but not complex, instructions". [*Id.*]

Finally, Day's arguments that "[t]he ALJ's reliance on the non-examining state agency doctors is not well founded" fails because the ALJ reasonably accounted for lapses in time

between their assessments and the alleged disability window. [*See* Tr. 31; 20 C.F.R. § 404.1513a.] Ultimately, the ALJ, must determine the RFC after considering the entire record. The RFC determination is his province alone. *Rudd v. Comm' r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Accordingly, Day's claims amount to an impermissible request to reweigh the evidence. The Court declines to do such and the judgment of the Commissioner will be affirmed. *Dyson*, 786 F. App'x at 588.

## V.

Based on the foregoing analysis, it is hereby **ORDERED** as follows:

1. Plaintiff Zachariah Day's motion for summary judgment [Record No. 6] is **DENIED**.

2. Defendant Commissioner of Social Security Frank Bisignano's motion for judgment [Record No. 14] is **GRANTED**.

3. This action will be **DISMISSED** and **STRICKEN** from the docket following entry of judgment in favor of the defendant.

Dated: July 10, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky